1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

MIGUEL RODRIGUEZ, on behalf of himself, all others similarly situated, and the general public,

Plaintiff,

v.

BUMBLE BEE FOODS, LLC,

Defendant.

Case No.:  17cv2447-MMA (WVG)

**ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND**

[Doc. No. 17]

**GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD**

[Doc. No. 18]

Plaintiff Miguel Rodriquez ("Plaintiff"), individually and on behalf of others similarly situated, moves for final approval of this class action settlement and for attorneys' fees, costs, and a class representative incentive award. *See* Doc. Nos. 17, 18. Defendant Bumble Bee Foods, LLC ("Bumble Bee") does not oppose Plaintiff's motion for final approval, but has filed an opposition to Plaintiff's motion for attorneys' fees, costs, and class representative incentive award. *See* Doc. No. 20. The Court held a final approval hearing on these matters pursuant to Federal Rule of Civil Procedure 23(e)(2). *See* Doc. No. 24. For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion for Final Approval of Class Action Settlement (Doc. No. 17), and **GRANTS IN PART** Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award (Doc. No. 18).

Plaintiff brings this putative class action against Bumble Bee, alleging violations of California's False Advertising Law ("FAL"), Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and breach of express and implied warranties. *See* Doc. No. 1 (hereinafter "Complaint").

Bumble Bee is a Delaware limited liability company with its principal place of business in San Diego, California. *Id.* ¶ 7. Plaintiff is an individual residing in Chula Vista, California. *Id.* ¶ 6.

Bumble Bee manufactures and sells a product called "Premium Select Medium Red Smoked Salmon Filets [sic] in Oil." *Id.* ¶ 1. In September 2017, Plaintiff purchased the Medium Red Smoked Salmon Fillets from the Wal-Mart store located at 875 East H. Street, Chula Vista, California. *Id.* ¶ 43. Plaintiff purchased this product believing that "it was high-quality, wild-caught, smoked Alaskan salmon." *Id.* ¶ 44. "Instead of receiving high-quality, wild-caught, smoked salmon, plaintiff received low-quality, farm-raised, colored, smoke-flavored salmon." *Id.* ¶ 49. Plaintiff alleges that the packaging of the salmon deceptively stated or suggested that the product was smoked, wild-caught salmon, when it was actually farmed salmon to which liquid smoke flavor had been added. *Id.* ¶ 2.

Plaintiff "lost money" as a result of buying this product, because "he did not receive what he paid for" when purchasing the Medium Red Smoked Salmon Fillets. *Id.* ¶ 50. Plaintiff seeks to represent a class of all persons who purchased the Medium Red Smoked Salmon Fillets from November 6, 2013 to present, for their own personal, family, or household use and not for resale. *Id.* ¶ 53.

Plaintiff commenced the instant action on December 6, 2017. *See* Complaint. On January 4, 2018, the parties participated in an Early Neutral Evaluation ("ENE") with Magistrate Judge Gallo, where the parties resolved this matter in its entirety. *See* Doc. Nos. 11, 12. Shortly thereafter, the parties entered into a Class Action Settlement Agreement ("Settlement Agreement"), which is subject to review under Federal Rule of

Civil Procedure 23. *See* Doc. No. 13-2, Exh. 1. On February 1, 2018, Plaintiff filed a Motion for Preliminary Approval[1] of Class Action Settlement. *See* Doc. No. 13. Bumble Bee filed a notice of non-opposition to the motion. *See* Doc. No. 14. On March 1, 2018, the Court entered an Order of Preliminary Approval of Class Action Settlement pursuant to Federal Rule of Civil Procedure 23(b)(2). *See* Doc. No. 16.

On March 26, 2018, Plaintiff filed the instant motions for Final Approval of Class Action Settlement and for Attorneys' Fees and Costs. *See* Doc. Nos. 17, 18. Bumble Bee filed a notice of non-opposition to Plaintiff's motion for Final Approval of Class Action Settlement, but filed an opposition to Plaintiff's Motion for Attorneys' Fees. *See* Doc. Nos. 19, 20.

## OVERVIEW OF THE SETTLEMENT

### 1.  Settlement Class

The Settlement Class is defined as all persons who, between December 6, 2013 and the date a judgment becomes final in this action, purchased, for household use, and not for resale or distribution purposes, Bumble Bee's Medium Red Smoked Salmon. *See* Doc. No. 13-2, Exh. 1 at 2.

### 2.  Settlement Terms

Pursuant to the Settlement Agreement, Bumble Bee will begin replacing the current product packaging with revised packaging beginning in the second quarter of 2018. *See* Doc. No. 17-1 at 4-5. Bumble Bee, however, is under no obligation to recall existing product bearing the current packaging, which inventory may be allowed to "sell through." *Id.* at 5; *see also* Doc. No. 13-2, Exh. 1 at 4.

Specifically, the revised packaging: (A) states that the product is "Smoke Flavored

---

[1] Plaintiff filed this motion as a "Motion for Approval of Class Action Settlement," seeking to consolidate the two-step settlement approval process, involving preliminary approval and a final approval hearing, into one motion and hearing. *See* Doc. No. 13-1 at 1 n.2. The Court, however, found that the two-step process was appropriate and construed the motion as one for preliminary approval of class action settlement.

Salmon Fillets," rather than "Smoked Salmon;" (B) no longer claims to be "Premium" or "Medium Red;" and (C) revises the packaging to replace the image that Plaintiff alleges suggests the product is wild caught, with an image that more fairly portrays the appearance of a farm-raised Coho salmon. Doc. No. 17-1 at 5. Bumble Bee has further modified its website so that it no longer indicates that the product is "lightly smoked." *Id.*

Because the parties sought certification of the settlement class pursuant to Rule 23(b)(2), the Court, in its discretion, found that notice to the class members was not necessary because the Settlement Agreement does not alter the unnamed class members' legal rights. *See* Doc. No. 16 at 3-4. The settlement class is not giving up any claims for damages or personal injury, as the released claims are limited to past claims for injunctive and declaratory relief only. *See id.* Plaintiff is the only class member who releases all of his claims, by virtue of his agreement to voluntary dismissal of his claims with prejudice following final approval. *See id.* The Court did, however, require Bumble Bee to provide notice to the California Office of the Attorney General and any other state attorney general where class members reside in accordance with the Class Action Fairness Act ("CAFA"). *See id.* at 4. To date, no state attorney general, or other recipients, have indicated any objection to the Settlement Agreement. *See* Doc. No. 17-1 at 6.

In the Settlement Agreement, the parties agreed that Plaintiff's counsel is limited to seeking an incentive award, attorneys' fees, and costs not to exceed $85,000.00. *See* Doc. No. 13-2, Exh. 1 at 5. The parties further agreed that Bumble Bee may not argue that any such award should amount to less than $30,000.00. *See id.* Plaintiff seeks a combined fee-and-cost award of $80,000.00, in addition to a $5,000.00 incentive award for Plaintiff.

## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### 1. Legal Standard

Courts require a higher standard of fairness when settlement takes place prior to

class certification to ensure class counsel and defendants have not colluded in settling the case. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Ultimately, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982).

A court considers several factors in determining whether a proposed settlement is "fair, reasonable, and adequate" under Rule 23(e). Such factors may include: (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation and the risk of maintaining class action status throughout the trial; (3) the stage of the proceedings (investigation, discovery and research completed); (4) the settlement amount; (5) whether the class has been fairly and adequately represented during settlement negotiations; and (6) the reaction of the class to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). The Court need only consider some of these factors—namely, those designed to protect absentees. *See Molski v. Gleich*, 318 F.3d 937, 954 (9th Cir. 2003), *overruled in part on other grounds* by *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010).

Judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

**2.** **Analysis**

**a. Strength of the Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation**

To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation (including the strengths and

weaknesses of Plaintiff's case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In other words:

> The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "It has been held proper to take the bird in hand instead of a prospective flock in the bush."

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citations omitted).

Plaintiff claims that while he and his counsel "believe this is a relatively strong case on the merits," Bumble Bee presented "certain defenses that, if valid, would reduce or eliminate the strength and value" of Plaintiff's claims. Doc. No. 17-1 at 12. For example, Plaintiff alleges that Bumble Bee uses artificial smoke flavor, while Bumble Bee has indicated that it uses natural smoke flavor, and if true, Plaintiff "would not have viable claims under the UCL's 'unlawful' prong." *Id.* Moreover, Plaintiff alleges that the challenged packaging suggests that the product is wild-caught. Bumble Bee, however, claims that the image displayed on its product is "typical of the Chilean region where the product is farmed." *Id.* at 13. Accordingly, given the likely duration of further litigation, risk, and expense, this factor weighs in favor of approving the settlement.

**b. The Risk of Maintaining Class Action Status Through Trial**

Pursuant to Rule 23, the Court may revisit a prior order granting certification of a class at any time before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). Where there is a risk of maintaining class action status throughout the trial, this factor favors approving the settlement. *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012) (finding that the complexity of the case weighed in favor of

approving the settlement).

The parties claim that "the likely expense, complexity, duration, and risk of obtaining and maintaining class certification through trial substantially outweigh the class's potential upside in terms of a monetary judgment." Doc. No. 17-1 at 13. The parties acknowledge that obtaining a nationwide class may be difficult in light of recent case law, even though Bumble Bee is headquartered in San Diego. Moreover, Bumble Bee claims that if Plaintiff is unable to certify a nationwide class, it will seek dismissal for lack of CAFA jurisdiction "since its sales in California during the class period were approximately just $400,000." *Id.* As a result, Plaintiff would have to file a new action in state court. Thus, in light of the risk of maintaining class action status through trial, this factor weighs in favor of settlement.

### c. The Stage of the Proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV*, 221 F.R.D. at 528. In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).

The parties represent that the settlement resulted from arms-length negotiations, and was not the result of collusion. The parties exchanged numerous letters detailing their positions on the facts and law and information about sales and damages, engaged in numerous telephone calls discussing the case and negotiating a resolution, and participated in an ENE conference with Magistrate Judge Gallo. *See* Doc. No. 17-1 at 12. Although formal discovery was not conducted in this case, such discovery "was unnecessary to reach the reasonable resolution embodied in the proposed Settlement Agreement." *Id.* As such, this factor favors approval.

### d. The Settlement Amount

"In assessing the consideration obtained by the class members in a class action

settlement, it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV*, 221 F.R.D. at 527 (internal citation and alteration omitted). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982)).

The Settlement Agreement provides injunctive relief and does not bar class members from seeking monetary relief. The injunctive relief "comports with the purpose of [California's consumer protection statutes] because it protects consumers from" misleading advertising, and "is consistent with the injunctive relief approved in . . . cases involving similar facts[.]" *Bee, Denning, Inc. v. Capital Alliance Grp.*, No. 13-CV-2654-BAS-WVG, 2016 WL 3952153, at *8 (S.D. Cal. July 21, 2016). Therefore, this factor weighs in favor of approval.

### e. Fair and Adequate Representation During Settlement Negotiations

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Adoma*, 913 F. Supp. 2d at 977 (quoting *DIRECTV*, 221 F.R.D. at 528).

Plaintiff's counsel "believes it is reasonable, appropriate, and in the class's interest to settle this matter now and in this manner." Doc. No. 17-1 at 15. Accordingly, this factor favors approval.

### f. Class Reaction to the Proposed Settlement

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered. *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). The absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a

small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations omitted); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class has filed no opposition).

As noted above, class members were not given formal notice because the settlement provides injunctive relief only. However, news of the settlement "was published in various places, including Law360." Doc. No. 17-1 at 16; *see also* Doc. No. 17-2, Exh. 2. Additionally, Bumble Bee provided notice to every state attorney general where class members reside in accordance with CAFA. *See* Doc. No. 17-3. The parties represent that to their knowledge, no one has expressed "any negative reaction to the Settlement." Doc. No. 17-1 at 16. As such, this factor weighs in favor of approval.

**3.    Conclusion**

Because the factors outlined above favor approving the Settlement, the Court **GRANTS** the motion and finds that the settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e).

## MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE INCENTIVE AWARD

Plaintiff seeks attorneys' fees, litigation costs, and a class representative incentive award totaling $85,000.00.[2] *See* Doc. No. 18. Specifically, Plaintiff seeks attorneys' fees in the amount of $79,067.00, litigations costs in the amount of $933.00, and a $5,000.00 incentive award for Plaintiff Miguel Rodriguez. *See id.* As set forth in the Settlement Agreement, Bumble Bee agrees not to argue that the Court should award less than $30,000.00 in attorneys' fees, costs, and an incentive payment. *See* Doc. No. 13-2, Exh. 1 at 5. As such, Bumble Bee opposes Plaintiff's request for fees totaling $80,000.00, and

---

[2] Class Counsel has entered into a fee-splitting agreement with another firm, Salpeter Gitkin, LLP ("Salpeter") under which Salpeter will receive 30% of any fees awarded in this case. *See* Doc. No. 18-1 at 1 n.2. Salpeter began pursuing the case prior to Class Counsel, but eventually "abandoned the cause." *Id.* at 1.

17cv2447-MMA (WVG)

Plaintiff's request for an incentive award in the amount of $5,000.00.  *See* Doc. No. 20.

1. **Attorneys' Fees**

   With respect to attorneys' fees, Class Counsel seek approval of the following hourly rates: $715.00 for Jack Fitzgerald, Esq., $ 550.00 for Trevor Flynn, Esq., and $485.00 for Melanie Persinger, Esq.  *See* Doc. No. 18-2 (hereinafter "Fitzgerald Decl.") ¶ 15.  Class Counsel further contend that they expended 55.4 hours on this case.  *See id.* at ¶ 14.

   a. **Legal Standard**

   Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  This action asserts California claims, and thus the Court applies California law to determine both the right to, and method for, calculating fees.  *See Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

   "[F]ee shifting" refers to an award under which a party that did not prevail in the litigation is ordered to pay fees incurred by the prevailing party.  *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (Ct. App. 2000).  California Law permits fee shifting in favor of the prevailing party on certain statutory causes of action, and when a plaintiff has acted as a private attorney general by enforcing an important right affecting the public interest (for example, Cal. Civ. Proc. Code §1021.5).  *Laffitte v. Robert Half Intern. Inc.*, 376 P.3d 672, 676 (Cal. 2016).

   In cases involving fee-shifting statutes, the primary method for establishing the reasonable attorney fees is the lodestar method.  *Staton*, 327 F.3d at 965; *see also Ketchum v. Moses*, 17 P.3d 735, 742 (Cal. 2001).  The Supreme Court has affirmed the primacy of the lodestar method of computing fees in cases in which a fee-shifting statute applies.  *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) ("[t]he 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.").  California courts routinely exercise their discretion to calculate attorneys' fees by applying the

lodestar method where, as here, the settlement does not use common-fund principles. *See Lealao*, 82 Cal. App. 4th at 26 (where "the responsibility to pay attorney fees is statutorily or otherwise transferred from the prevailing plaintiff or class to the defendant, the primary method for establishing the amount of 'reasonable' attorney fees is the lodestar method.").

The lodestar method multiplies the number of hours reasonably expended by a reasonable hourly rate. The Court may, in its discretion, increase or decrease the loadstar figure by applying a positive or negative multiplier based on, among other factors, (1) the quality of representation, (2) the novelty and complexity of the issues, (3) the results obtained, and (4) the contingent risk presented. *In re Consumer Privacy Cases*, 96 Cal. Rptr. 3d 127, 136 (Ct. App. 2009). The ultimate inquiry is whether the end result is reasonable. *See Apple Computer, Inc. v. Superior Court*, 24 Cal. Rptr. 3d 818, 826 (Ct. App. 2005).

### b. Analysis

In calculating the lodestar figure, the Court begins by determining reasonable hourly rates for each attorney, in addition to the number of hours reasonably expended on the litigation.

#### i.  *Reasonable Hourly Rates*

The Court first considers whether the requested hourly rates are reasonable. Under California law, "[t]he reasonable hourly rate is that prevailing in the community for similar work." *PLCM Grp. v. Drexler*, 997 P.2d 511, 518 (Cal. 2000). Determining a reasonable rate in the local market is "one of the means of providing some objectivity to the process of determining reasonable attorney fees," which is "vital to the prestige of the bar and the courts." *Nichols v. City of Taft*, 66 Cal. Rptr. 3d 680, 687 (Ct. App. 2007) (internal quotation marks omitted). The Court addresses the requested hourly rates for each of the three attorneys in turn.

Mr. Fitzgerald graduated from law school in 2004, but has not yet been approved for an hourly rate of $715.00. *See* Fitzgerald Decl. ¶ 15. The most recent fee award in

the San Diego legal market occurred in February 2017, where a state court judge approved an hourly rate of $650.00 per hour for Mr. Fitzgerald. *See Cumming v. BetterBody Foods & Nutrition, LLC*, No. 37-2016-00019510-CU-BT-CTL (San Diego Super. Ct.). Nearly one-year prior, a magistrate judge in the Southern District of California approved an hourly rate of $625.00 for Mr. Fitzgerald. *See Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-CV-595-BAS-MDD, 2016 WL 1573319, at *2 (S.D. Cal. Apr. 18, 2016).

Mr. Trevor Flynn graduated from law school in 2007. Fitzgerald Decl. ¶ 15. Mr. Flynn has similarly not yet been approved for an hourly rate of $550.00, but his most recent fee award in the local community was in February 2017, where a state court judge from the Superior Court of San Diego approved an hourly rate of $500.00. *Id.* ¶ 17.

Finally, Ms. Melanie Persinger graduated from law school in 2010. *Id.* ¶ 15. Ms. Persinger has not yet been approved for an hourly rate of $485.00. The most recent fee award in the local community occurred in April 2016, wherein Ms. Persinger was approved for an hourly rate of $400.00 by the Superior Court of San Diego. *Id.* ¶ 15.

Here, taking into consideration the rates awarded in other cases in the local market, and "relying, in part on [the Court's] knowledge and experience" of hourly rates in this community, *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011), the Court finds the following hourly rates are in line with the prevailing market rates for attorneys of comparable skill, level, and experience for work on similar matters: $665.00 for Mr. Fitzgerald; $515.00 for Mr. Flynn, and $440.00 for Ms. Persinger. *See Oxina v. Lands End, Inc.*, No. 14-CV-2577-MMA-NLS, 2016 WL 7626190, at *5-6 (S.D. Cal. Dec. 2, 2016) (approving hourly rates of $605 for two attorneys admitted to practice in California in 2003 and 2007, respectively); *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 978-79 (S.D. Cal. 2014) (awarding hourly rate of $650 for attorney who graduated in 1995, $375 for an associate who graduated in 2011, and $350 for an associate who graduated in 2009); *cf. Reyes v. Bakery and Confectionery Union and Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 853 (N.D. Cal. 2017) (approving a $700 hourly rate for an attorney with 42 years of

experience).

      *ii.    Reasonable Hours Expended*

Second, the Court considers whether the expenditure of 55.4 hours on this case is reasonable. "[A] fee request ordinarily should be documented in great detail[.]" *Weber v. Langholz*, 46 Cal. Rptr. 2d 677, 683 (Ct. App. 1995); *see also Ketchum*, 17 P.3d at 741 (Cal. 2001) ("[T]rial courts must carefully review attorney documentation of hours expended. . . .").

Class Counsel aver that the hours expended on this action are reasonable in light of the tasks performed and results achieved. Doc. No. 18-1 at 5-6. Moreover, Class Counsel voluntarily excluded travel time, additional time required to finalize and file the instant motion, and time required to prepare for, and attend, the hearing on the instant motion. *See id.* at 6. Mr. Fitzgerald has provided detailed time sheets for each of the three attorneys who performed work on this case. *See* Fitzgerald Decl., Exh. 2. Upon review of the billing records provided by counsel, and taking into account the time voluntarily deducted and/or excluded, the Court finds that the 55.4 hours expended on this case are reasonable.

      *iii.    Lodestar Figure*

Based on the reasonable hourly rates identified above, and the number of hours reasonably expended, the lodestar calculations are as follows:

| Name | Hours | Hourly Rate | Total |
|------|-------|-------------|-------|
| Jack Fitzgerald, Esq. | 42.2 | $665.00 | $28,063.00 |
| Trevor M. Flynn, Esq. | 12.4 | $515.00 | $6,386.00 |
| Melanie R. Persinger, Esq. | 0.8 | $440.00 | $352.00 |
| **Total** | **55.4** | **~$540.00** | **$34,801.00** |

*iv.    Reasonableness of Award*

Plaintiff requests the Court apply a positive multiplier to the lodestar figure based upon, among other factors, (1) the quality of representation, (2) the novelty and complexity of the issues, (3) the results obtained, and (4) the contingent risk presented in this case. *In re Consumer Privacy Cases*, 96 Cal. Rptr. 3d at 136. Bumble Bee asserts that "Plaintiff cannot justify any multiplier given the factual and procedural circumstances present here[.]" Doc. No. 20 at 3.

The California Supreme Court has indicated that "the unadorned lodestar reflects the general local hourly rate for a *fee-bearing case*; it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider[.]" *Ketchum*, 17 P.3d at 745 (emphasis in original). The adjustment to the lodestar figure "is intended to approximate the market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees." *Id.* at 746.

Here, in considering the relevant factors, the Court finds, in its discretion, that a multiplier is not warranted. *See id.* ("Of course, the trial court is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other facts, although it retains discretion to do so in the appropriate case") (emphasis in original). Moreover, the quality of representation and complexity of the issues "are already encompassed in the lodestar." *Id.* While the Court agrees that Class Counsel adequately represented Plaintiff and the Class, promptly resolved the litigation at an early stage, obtained favorable results for Plaintiff and the Class, and prosecuted this action on a contingency basis, the Court finds that the lodestar figure adequately compensates counsel given the procedural history and swift resolution of the case. *See id.* ("[A] trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation."); *accord Chaudhry v. City of L.A.*, 751 F.3d 1096, 1112 (9th Cir.

2014) (noting that under California law, "[t]he choice whether to award a [contingency] multiplier . . . is within the district court's discretion").  As Bumble Bee notes, the parties resolved the dispute at the ENE—just one month after the Complaint was filed—avoiding the cost and time of discovery and motion practice.  *See* Doc. No. 20 at 3.

The Court has considered Plaintiff's request that "[i]f the Court reduces Class Counsel's requested costs, Class Counsel respectfully requests the Court simply increase the fee award correspondingly, so that the total amount awarded in any event is $80,000." Doc. No. 18-1 at 11 n.7.  In the Court's view, however, attempting to maximize a fee award, or increase it to a predetermined amount, is not a proper justification for the application of a multiplier.

Accordingly, because the "lodestar figure is presumptively reasonable," and because adjustments should be made only in rare situations, the Court declines to award a multiplier.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *see also Asghari v. Volkswagen Grp. Of Am., Inc.*, No. 13-CV-2529, 2015 WL 12732462, at *51 (C.D. Cal. May 29, 2015) (declining to apply multiplier because "the lodestar adequately compensates counsel for the work they performed in this litigation."); *Carr*, 51 F. Supp. 3d at 984 (declining to award a multiplier where parties entered into an injunctive only settlement of claims arising under the CLRA and other consumer protection laws).

### c.  Conclusion

Accordingly, the Court finds attorneys' fees in the amount of $34,801.00 to be reasonable and **APPROVES** attorneys' fees in that amount.

### 2.  Litigation Expenses

Plaintiff's counsel seeks reimbursement for costs in the amount of $933.00 for taxable and non-taxable costs.  *See* Doc. No. 18-1 at 11.  Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Class counsel are entitled to reimbursement of the

out-of-pocket costs they reasonably incurred investigating and prosecuting this case.  *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)); *Staton*, 327 F.3d at 974.

Here, Class Counsel's expenses include filing fees, mailing costs, meals, airfare, and Uber transportation costs.  *See* Doc. No. 18-2, Exh. 1 at 4-5.  Plaintiff has provided a detailed chart indicating the date, amount, and description of each cost incurred in connection with this action totaling $933.22.  *See id.*  Bumble Bee "does not challenge an award of . . . the costs incurred" in the amount of $933.00.  Doc. No. 20 at 2.  As such, the Court finds that Class Counsel's out-of-pocket costs were reasonably incurred in connection with the prosecution of this litigation, were advanced by Class Counsel for the benefit of the class, and should be reimbursed in full in the amount requested.  *See* Cal. Civ. Proc. Code § 1033.5.  Accordingly, the Court **APPROVES** Class Counsel's litigation costs in the amount of $933.00.

### 3.  <u>Class Representative Incentive Award</u>

Plaintiff further moves the Court for an incentive award in the amount of $5,000.00.  *See* Doc. No. 18-1 at 12-13.  Bumble Bee opposes this request, arguing that a $5,000.00 incentive award is "excessive under the circumstances," and claims that a $1,500.00 incentive award is appropriate.  Doc. No. 20 at 4.  "Although Plaintiff attended the early neutral evaluation," Bumble Bee asserts that Plaintiff was not deposed, did not produce any documents, did not submit declarations, did not respond to written discovery, and did not appear as a witness at trial.  *Id.*

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977.  "Incentive awards are appropriate only to compensate named plaintiffs for work done in the interest of the class[.]"  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (citing *Staton*, 327 F.3d at 977).  Courts should ensure that an incentive award is not based on fraud or collusion.  *Id.*  In assessing the reasonableness of an incentive award, several district courts in the Ninth Circuit have applied the five-factor test set forth in *Van Vranken v. Atlantic Richfield Co.*, 901 F.

Supp. 294, 299 (N.D. Cal. 1995), which analyzes: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation.

Here, Plaintiff "provided Class Counsel with evidence of his purchase," made himself available for phone calls to assist in drafting the Complaint, was in regular communication with Class Counsel, reviewed the Complaint, attended the January 4, 2018 ENE, and attended the Final Approval hearing. Doc. No. 18-1 at 13. Moreover, by way of the Settlement Agreement, Plaintiff has agreed to waive any claims for damages. Of particular importance, however, is the short duration of the litigation. Plaintiff filed the Complaint on December 6, 2017, and the parties had reached a settlement agreement by early January 2018. *See* Doc. Nos. 1, 12. Even taking into account the fact that counsel drafted letters to Bumble Bee prior to the filing of the Complaint, at most, Plaintiff devoted a few months to the resolution of this action. Additionally, Plaintiff does not submit a declaration outlining any personal difficulties or the amount of time expended on this litigation as the class representative.

Moreover, the cases Plaintiff relies upon awarding $5,000.00 incentive awards are all distinguishable from the case at bar because in those cases, the named plaintiffs were actively involved in the litigation for extended periods of time, produced written discovery, and in some situations, sat for their own depositions. *See Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-2471-WQH-BGS, 2014 WL 888665, at *8 (S.D. Cal. Mar. 5, 2014) (awarding $5,000 representative award where the named plaintiff "expended over 75 hours directly related to the representation of the Settlement Class."); *Morey v. Louis Vuitton N. Am., Inc.*, No. 11-CV-1517-WQH-BLM, 2014 WL 109194, at *11 (S.D. Cal. Jan. 9, 2014) (awarding $5,000 representative award where the named plaintiff "dedicated a significant amount of time and effort in bringing this case forward and litigating this case, actively participating in this lawsuit, undertaking significant risks,

and achieving substantial class benefits."); *Simon v. Toshiba Am.*, No. 7-CV-6202-MHP, 2010 WL 1747956, at *5 (N.D. Cal. Apr. 30, 2010) (awarding a $4,000 incentive award because the plaintiff "has supplied substantial documentation regarding the time he spent in moving this case forward as its class representative.").

Accordingly, the Court finds that a $1,500.00 incentive award is reasonable and falls within the acceptable range awarded in similar cases. *See Carr*, 51 F. Supp. 3d at 986 (noting that in an injunctive-only relief case, "[a]lthough the risk, personal difficulties, and amount of time Class Representatives likely had to commit to this action was minimal, the [$1,500] awards do appear to be in line with those awarded in similar actions."); *see also Vinh Nguyen v. Radient Pharm. Corp.*, No. 11-CV-00406 DOC (MLGx), 2014 WL 1802293, at *11 (C.D. Cal. May 6, 2014) (approving $2,000 award for class representatives who "participated in discovery" and "sat for their own depositions"); *Wolph v. Acer Am. Corp.*, No. 09-CV-1314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (awarding class representative only $2,000 despite declaration indicating that the class representative spent more than 100 hours on the case and sat for a deposition); *Rigo v. Kason Indus., Inc.*, No. 11-CV-64-MMA (DHB), 2013 WL 3761400, at *8 (S.D. Cal. July 16, 2013) (finding $2,500 incentive award well within the acceptable range "for more than two years of service"). As such, the Court **APPROVES** the $1,500.00 incentive award as reasonable.

### CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion for Final Approval of Class Action Settlement (Doc. No. 17), and **GRANTS IN PART** Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award (Doc. No. 18). The Court finds the proposed settlement of this class action appropriate for final approval pursuant to Federal Rule of Civil Procedure 23(e). The Court finds that the proposed settlement appears to be the product of serious, informed, arms-length negotiations, that the settlement was entered into in good faith, and that Plaintiff has satisfied the standards for final approval of a class action settlement under federal law. Further, the Court finds attorneys' fees in

the amount of $34,801.00, costs in the amount of $933.00, and a class representative award in the amount of $1,500.00 to be reasonable.

### JUDGMENT AND ORDER OF DISMISSAL

The Court **APPROVES** the Settlement and **ORDERS** the parties to implement the Settlement Agreement according to its terms and conditions and this Court's Final Order.[3]

1.     The Court finds that it has jurisdiction over this action and all Parties and Settlement Class Members.

2.     The Settlement Class covered by this Order is defined as "all persons who, between December 6, 2013 and the date a judgment becomes Final in this Action (the 'Class Period'), purchased, for household use, and not for resale or distribution purposes, Bumble Bee's Medium Red Smoked Salmon."

3.     The Court finds and determines that Plaintiff Miguel Rodriguez is confirmed as Class Representative, and that The Law Office of Jack Fitzgerald, PC, and their attorneys of record, are confirmed as Class Counsel.

4.     Pursuant to the Court's March 1, 2018 Order Granting Motion for Preliminary Approval of Class Action Settlement (Doc. No. 16), the Court finds that no notice to the Class of the pendency of this Action as a class action or the Settlement Agreement is or was necessary because the parties are seeking certification of the settlement class under Rule 23(b)(2), and because Class Members are not releasing any claims for damages.  Nevertheless, the Court directed Bumble Bee to make the notice required under CAFA, 28 U.S.C. § 1715, which Bumble Bee has done, with no recipient taking any issue with the proposed settlement.

5.     The Settlement Agreement was reached after serious, informed, arms-length and non-collusive negotiations by capable and experienced counsel with full knowledge

---

[3]  This Order and Judgment hereby adopts and incorporates by reference the terms and conditions of the Settlement Agreement, together with the definitions used therein.

of the facts, the law, and the risks inherent in litigating the Action, and with the assistance of Magistrate Judge William V. Gallo. The Settlement Agreement is entitled to a presumption of procedural fairness, and was entered into as the result of a process that was in fact procedurally fair, and the result of Judge Gallo's mediator's proposal.

6. The Settlement Agreement confers substantial benefit upon the Settlement Class Members, and the public, is in the public interest, and will provide the parties with repose from litigation. Although there is no economic relief as a result of the Settlement, the terms of the Settlement Agreement are fair and reasonable. No Class Member, with the sole exception of the Class Representative, is waiving any claim for damages.

7. Pursuant to Federal Rule of Civil Procedure 23(e), the Court hereby finds that the Settlement Agreement is fair, reasonable, and adequate, and therefore finally approves the Settlement Agreement and directs that the Settlement Agreement be effectuated in accordance with the terms set forth therein.

8. The Court approves the payment of attorneys' fees to Class Counsel in the amount of $34,801.00, approves payment of costs to Class Counsel in the amount of $933.00, and further approves an incentive award to Plaintiff Miguel Rodriquez in the amount of $1,500.00.

9. The parties must comply with all obligations under the Settlement Agreement, which becomes effective upon the date by which any Judgment entered pursuant to the Settlement Agreement becomes Final.

10. This Final Approval Order, and the Settlement Agreement, are binding on all Settlement Class Members. The Class Members waive and release any and all claims, demands, rights, suits, liabilities, and causes of action for injunctive relief only. Consequently, the Settlement Agreement, Final Approval Order, and Judgment shall fully, finally and forever resolve the Released Claims, and can be raised as a complete defense to, and will preclude any action or proceeding against, the Released Parties based on the Released Claims, as defined in the Settlement Agreement. Nothing in this Order is to be construed as releasing any party or entity from any claim for damages, except

insofar as Plaintiff Miguel Rodriguez and Bumble Bee have agreed that Plaintiff will voluntarily dismiss the Action with prejudice as to Plaintiff's individual claims, pursuant to the terms of the Settlement Agreement.

11.     Nothing in this Order shall preclude any action to enforce or interpret the terms of the Settlement Agreement.  Any action to enforce or interpret the terms of the Settlement shall be brought solely in this Court.

12.     No action taken by Bumble Bee or Plaintiff, either previously or in connection with the negotiations or proceedings related to the Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims and/or defenses heretofore made or an acknowledgement or admission by any Party of any fault, liability, or wrongdoing of any kind whatsoever to any other Party.  Neither the Agreement nor any act performed or document executed pursuant to, or in furtherance of, the Agreement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim made by the Plaintiff, Settlement Class Members, or Class Counsel, and/or of any wrongdoing and/or liability of the persons or entities released under this Final Approval Order and the Settlement Agreement, and/or (b) is, or may be deemed to be or used as, an admission of, or evidence of, any fault or omission of any of the persons or entities released under this Final Approval Order and the Settlement Agreement, in any proceeding in any court, administrative agency, or other tribunal. Furthermore, Bumble Bee's non-opposition to the entry of this Final Approval Order shall neither be construed as an admission and/or concession by them that class certification was appropriate or would be appropriate in any other action and/or any other admission.

13.     The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement, and all Parties hereto submit to the continuing jurisdiction of the Court for purposes of implementing and enforcing this Settlement.

/ / /

Accordingly, the Court **DISMISSES** this action **with prejudice**. The Clerk of Court is instructed to enter final judgment in accordance with this Order.

   **IT IS SO ORDERED.**

Dated:  April 24, 2018

HON. MICHAEL M. ANELLO
United States District Judge